Mikel R. Miller
OSB #91475
E-Mail: mike@lawofficeofmikelrmiller.com
Law Office of Mikel R. Miller, P.C.
26 N.W. Hawthorne
Bend, OR 97701
Telephone: (541) 388-9819
Fax: (541) 317-4987
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SARAH GREENE personally and as next friend for S. G. a minor and K. G. a minor,<br><br>     Plaintiffs<br><br>     v<br><br>BOB CAMRETA, DESCHUTES COUNTY DEPUTY SHERIFF JAMES ALFORD, DESCHUTES COUNTY, JANE DOE, BOB SMIT, THE KIDS CENTER, THE BEND LAPINE SCHOOL DISTRICT, and TERRY FRIESEN,<br><br>     Defendants. | Case No.:<br><br>COMPLAINT<br>Civil Rights<br> 4th Amendment<br> 14th Amendment<br> 42 USC § 1983<br><br>JURY TRIAL REQUESTED |

  Plaintiffs, by and through their attorney of record Mikel R. Miller, hereby allege as follows:

PAGE 1 of 18- COMPLAINT

JURISDICTIONAL STATEMENT

Plaintiffs' are seeking relief under the U.S. Constitution, 4th and 14th Amendments and 42 USC §1983 and § 1988, with ancillary State claims. This Court has jurisdiction of this matter pursuant to 28 U.S.C § 1331 and § 1343 (3).

1.

PARTIES

Plaintiff Sarah Greene is the natural mother of S. G. a minor, and K. G. a minor, all residents of Bend, Oregon. Sarah Greene brings this action on behalf of herself and as next friend for S.G. and K.G.

2.

Bob Camreta, (hereinafter referred to as Camreta) at all times relevant to this action, was an employee of the State of Oregon working for the Department of Human Services, Child Protective Services, (hereinafter referred to as DHS) and is being sued in his individual capacity.

3.

Deputy James Alford, (hereinafter referred to as Alford) was an employee of the Deschutes County Sheriff's Office at all times relevant to this action, and is being sued in his individual and official capacity.

4.

Deschutes County Sheriff's Office is a division of the Deschutes County Government. Deschutes County is a local government entity located in the State of Oregon.

PAGE 2 of 18- COMPLAINT

5.

Jane Doe is an unknown employee of The KIDS INTERVENTION & DIAGNOSTIC SERVICE CENTER (hereinafter referred to as the Center). Bob Smit is the executive director of the Center and personally makes policy and procedure decisions for the Center. The Center is a non profit corporation organized under the laws of the State of Oregon. The Center appears to be a regional assessment center formed pursuant to ORS 418.780 to ORS 418.796. The Center works closely in joint action with local law enforcement agencies (hereinafter referred to as LEA), which include the Deschutes County Sheriffs Office, Camreta and Alford. The Center conducts forensic examinations of children whom are alleged victims of abuse, for LEA and DHS.

6.

The Bend LaPine School District is a local government entity organized pursuant to the statutes of the State of Oregon, and in control of Elk Meadow Elementary school located in Bend, Oregon. Terry Friesen (hereinafter referred to as Friesen) is an employee of the Bend LaPine School District, working at Elk Meadow Elementary School, and is being sued in her official capacity.

FACTS

1.

Prior to February 10, 2003, Nimrod Greene lived with his wife Sarah and their two daughters, S.G., born 1993 and K.G., born 1997. Mr. Greene was a tile mason employed by Franklin Smith, Jr.

PAGE 3 of 18- COMPLAINT

2.

On February 10, 2003, Mr. Greene was drinking alcoholic beverages with Mr. Smith at Mr. Smith's residence. After Mr. Greene left his employer's residence, the employer's son, F.S., born 1995, made a statement that he was mad at Mr. Greene because Mr. Greene had tied his shoe laces together. After questioning by the father, F.S. said that Mr. Greene had touched his private parts on the outside of his pants.

3.

Mr. Green was arrested on February 12, 2003 for sexually abusing F.S. Mr. Greene was released on bail the same day after Sarah Greene posted security in the amount of $10,000.00.

4.

On February 24, 2003, Camreta and Alford, went to Elk Meadow Elementary School, located in Bend, Oregon, where S.G. was attending the fourth grade. They informed the personnel at the school they wanted to speak to S.G. Camreta and Alford did not have a warrant, court order, probable cause, or consent of a parent or the child to seize S.G.

5.

Friesen, following the custom and policy of the Bend LaPine School District, went to S.G.'s classroom and seized custody of S.G., removed her from her classroom and transferred her custody to Camreta and Alford. Friesen did not have a warrant, court order, probable cause or consent of a parent or the child. Frieson should have known she did not have authorization to remove S.G. from her class for a non-school purpose. Frieson should have foreseen the emotional trauma and injury her actions would cause S.G. As a result of Frieson's actions Plaintiff S.G. has lost her belief that the school was a safe place and that she could trust the teachers.

PAGE 4 of 18- COMPLAINT

6.

The Bend LaPine School District has a custom and policy of unreasonably seizing children for non-school purposes, without a warrant, court order, probable cause or consent of a parent or the child. The school knew that the parents had not consented to this action nor had the parents knowingly authorized the school to consent on behalf of the parent or child.

7.

Camreta and Alford then conducted a custodial interrogation of S.G., for over one (1) hour. They did not contact her parents or seek a court order before conducting the interrogation. They did not allow her to leave the room or contact her parents. This action was an unreasonable seizure and search.

8.

Camreta and Alford conducted the interrogation of S.G. in an incompetent manner designed to elicit false accusations; they asked leading questions; they repeatedly asked S.G. the same questions; they continuously rejected the child's answers if the answers were not what Defendants wanted to hear; they would not let the child leave the room until the child made a statement that they could interpret as a crime committed by the father; and they knowingly failed to preserve a record of the initial interview. Defendants did not comply with any minimally acceptable technique for interviewing children about abuse. Defendants claim that S.G. admitted her Dad touched her in a bad way on her chest and bottom on the outside of her clothes.

9.

As a result of this seizure and custodial interrogation, S.G. suffered severe emotional trauma and was psychologically damaged. She was physically ill, she repeatedly threw up, suffered fear, anxiety, depression, humiliation and invasion of privacy.

PAGE 5 of 18- COMPLAINT

10.

After completing the interrogation of S.G., Camreta and Alford contacted Plaintiff Sarah Greene at her home. They were in the home when S.G. got off of the bus. S.G. was extremely upset from the interrogation and ran straight to her bedroom. She was obviously extremely upset and appeared to her mother to be scared and emotionally disturbed. Camreta and Alford interfered and prevented Plaintiff Sarah Greene from consoling her child. They ordered her not to discuss the matter with the child. Camreta and Plaintiff Sarah Greene then discussed a safety plan in which Sarah Greene agreed that Mr. Greene would not be left alone with the children, and that Sarah would cooperate in having S.G. examined.

11.

Sarah Greene asked if S.G. could be examined by her personal physician Dr. Boehm. Camreta told Sarah the exam had to be done at the Center, but that Dr. Boehm worked at the Center. Sarah Greene agreed to take the children to be examined at the Center. Plaintiff Sarah Greene made it clear to Camreta that she expected to be with S.G. during the exam. On February 27, 2003, Plaintiff Sarah Greene signed a medical release allowing Camreta to obtain S.G.'s medical records.

12.

On March 3, 2003, Plaintiff Sarah Greene contacted the Center and spoke to a woman named Jill. Plaintiff informed Jill that she wanted Dr. Boehm to do the examination of her daughter S.G. because she did not want her daughter traumatized by having an invasive examination performed by a stranger. Plaintiff was informed that Dr. Boehm did not work at the Center. Plaintiff was then informed that an appointment had also been scheduled for her

PAGE 6 of 18- COMPLAINT

daughter K.G. Plaintiff informed the Center on this date that she wanted to, and intended to, be present during the examination of her daughters S.G. and K.G.

13.

On March 6, 2003, Nimrod Greene was indicted for six counts of sex abuse I, one count against F.S. and 5 counts against his daughter S.G. Mr. Greene was arrested and placed in custody on March 6, 2003.

14.

On March 6, 2003, an attorney, hired by the Greene family, sent a letter to Camreta informing him that the entire family wished to exercise their rights under the 5th amendment to remain silent, and that they would not be meeting with Camreta without a member of the attorney's firm present. Camreta was invited to contact the attorney to arrange a meeting for a mutual exchange of information to put to rest any "legitimate concerns your department may have." All medical releases previously executed were revoked, and Camreta was informed that if he needed any documentation from the family, to contact the attorney.

15.

On March 7, 2003, Dr. Boehm wrote a letter on behalf of S.G. documenting S.G.'s extensive medical history relating to repeated urinary tract infections, chronic antibiotic use, and that S.G. had a problem with cleanliness in the genital area, and that "examination of S.G. genitalia and attention to cleanliness is an important part of care by her parents'. There is certainly no reason for her father to be excluded from performing this case."

16.

On March 11, 2003 Camreta submitted an affidavit to the Deschutes County Juvenile Court seeking a protective order for DHS to take custody of S.G. and K.G. Camreta intentionally

PAGE 7 of 18- COMPLAINT

and knowingly submitted false information in the affidavit and deliberately omitted relevant and material facts which were known to Camreta. Camreta deliberately misinterpreted statements made by S.G. Camreta knew that a safety plan was in place and that it was being honored by Plaintiff Sarah Greene. Without probable cause to believe the children were in danger he obtained the order to remove the children, and did remove the children from their home. S.G. & K.G. were placed in a foster home. Camreta initiated the removal of the children to aid the LEA investigation, not to protect the children.

17.

On March 11, 2003, Camreta removed the children from Plaintiff Sarah Greene's care, custody and control. At the time he did so he knew that the alleged perpetrator, Nimrod Greene, was in custody and not in the home, and there was no danger to the children. Plaintiff Sarah Greene informed Camreta at that time that she had located an alternative residence in which Nimrod Greene could reside when he was released from custody, so there was no threat of future harm to the children. No reasonable person in Camreta's position could have believed there was good cause to remove the children from their home, even with a court order.

18.

The removal of the children from the home caused Plaintiff Sarah Greene, and Plaintiff S.G. and Plaintiff K.G. to suffer severe emotional trauma and upset. All three Plaintiffs were crying, extremely distraught and extremely fearful. The children permanently lost their trust that their parents could protect them and keep them safe. The family relationship was permanently damaged. The Plaintiffs' sense of security was permanently damaged.

19.

At a shelter care hearing on March 12, 2003, Sarah Greene informed Camreta that she wanted to attend any medical exam of S.G. or K.G.

20.

On March 20, 2003, Plaintiff Sarah Greene went to the Center with the expectation that she would be allowed to be present during the interview and examination of her daughter K.G. The Center attempted to conduct an interrogation of Plaintiff Sarah Greene. Plaintiff Sarah Greene was informed by the Center that Camreta and a detective Toney of the Deschutes County Sheriffs Office would be allowed to watch her interrogation. Plaintiff refused to answer the questions without her attorney.

21.

Jane Doe, complying with the specific policies and procedures put in place by Bob Smit at the Center, ordered Sarah to leave the premises prior to the exam. The Center prevented and refused to allow Plaintiff Sarah Greene to attend the medical examination of her daughter K.G. The Center refused to allow Plaintiff Sarah Green to remain on the premises while her daughter were examined. The Center knew the mother was not suspected of abusing the child. The Center knew that the mother did not consent to the exam taking place without her being present. The Center did allow Camreta and Toney to remain on the premises and to watch the interview of K.G. In the alternative it was Camreta that ordered that Plaintiff Sarah Greene could not remain on the premises or attend the examination of her daughter.

PAGE 9 of 18- COMPLAINT

22.

Plaintiff K.G. was subjected to an invasive medical examination from which she suffered embarrassment, humiliation, and extreme emotional distress. The Center did not have a warrant, court order, probable cause or consent of the parent or child to conduct this invasive examination, and there was no exigent circumstances justifying such a traumatic invasion of Plaintiff K.G.'s privacy.

23.

As a result of the Plaintiff Sarah Greene being denied her parental right to stay with her daughter K.G., Plaintiff Sarah Greene and daughter K.G. suffered humiliation, embarrassment, emotional distress and trauma.

24.

On March 31, 2003, Plaintiff Sarah Greene went to the Center to be there for the examination of her daughter S.G.

25.

Jane Doe, complying with the specific policies and procedures put in place by Bob Smit at the Center, ordered Sarah to leave the premises prior to the exam. The Center prevented and refused to allow Plaintiff Sarah Greene to attend the medical examination of her daughter S.G. The Center refused to allow Plaintiff Sarah Green to remain on the premises while her daughter were examined. The Center knew the mother was not suspected of abusing the child. The Center knew that the mother did not consent to the exam taking place without her being present. The Center did allow Camreta and Toney to remain on the premises and to watch the interview of S.G. In the alternative it was Camreta that ordered that Plaintiff Sarah Greene could not remain on the premises or attend the examination of her daughter.

PAGE 10 of 18- COMPLAINT

26.

Plaintiff S.G. was subjected to an invasive medical examination from which she suffered embarrassment, humiliation, and extreme emotional distress. The Center did not have a warrant, court order, probable cause or consent of the parent or child to conduct this invasive examination, and there was no exigent circumstances justifying such a traumatic invasion of Plaintiff S.G.'s privacy.

27.

As a result of the Plaintiff Sarah Greene being denied her parental right to stay with her daughter S.G., Plaintiff Sarah Greene and daughter S.G. suffered humiliation, embarrassment, emotional distress and trauma.

28.

Plaintiff Sarah Greene requested copies of the interview notes and the video tape. As a parent she needed access to her childrens medical records in order to properly parent her children. The Center, according to policies and procedures put in place by Bob Smit refused to provide copies of the children's medical records to Plaintiff Sarah Greene.

29.

The refusal to provide the children's parent with access to the children's medical records caused injury to the family relationship and caused Plaintiff Sarah Greene to suffer fear and emotional trauma.

30.

Camreta, Alford, Frieson, Bend LaPine School District, Jane Doe, Bob Smit and the Center, were persons acting under color of State law at all times relevant to this matter.

PAGE 11 of 18- COMPLAINT

31.

At all times relevant to this matter the Defendants failed to respect the rights of Sarah Greene and S.G. & K.G. to a familial relationship, and Defendants caused injury to Plaintiffs by their callous disregard of Plaintiffs' rights.

Count 1

**42 USC § 1983**

**Violation of the 4th Amendment**

**Unreasonable Seizure**

Defendant Friesen seized Plaintiff S.G, on February 24, 2003. Defendant Friesen made an unreasonable seizure of Plaintiff S.G., when she removed her from her classroom.

Defendant Friesen knew or reasonably should have known that the child's parents did not consent to removing the child from the classroom for a non-school related activity.

The Defendant's actions were a direct and proximate cause of damages suffered by Plaintiff S.G. as alleged above.

Count 2

**42 USC § 1983**

**Violation Of The 4th & 14th Amendment**

**Unreasonable Seizure By Bend LaPine School District Custom And Policy**

**Unreasonable Interference in Family Relationships by Bend LaPine School District Custom And Policy**

PAGE 12 of 18- COMPLAINT

The Bend LaPine School District has a custom and policy of seizing children from classrooms and subjecting them to custodial police interrogations without a warrant, parental consent, or probable cause and exigent circumstances.

The Bend LaPine School District has adopted this policy with callous disregard of Plaintiff S.G.'s rights under the 4th Amendment to remain free from unreasonable seizures and in violation of the 14th amendment substantive due process right of parents to direct the care of their children and rights to protect their children.

The custom and policies of the Bend LaPine School District caused the unreasonable seizure of S.G. is a direct and proximate cause of the damages she suffered as alleged as above.

Count 3

**42 USC § 1983**

**Violation of 4th Amendment**

**Unreasonable Seizure And Search By Camreta and Deputy Alford**

Camreta and Alford, conducted an unreasonable search and seizure of Plaintiff S.G. by conducting a custodial interrogation without a warrant, parental consent or probable cause and exigent circumstances.

This unreasonable search and seizure as the direct and proximate cause of S.G.'s damages as alleged above.

PAGE 13 of 18- COMPLAINT

Count 4

**Deschutes County Sheriffs Office Has A Custom And Policy Of Unreasonable Seizure**

The Deschutes County Sheriffs Office has a custom and policy of seizing children from classrooms and subjecting them to custodial police interrogations without a warrant, parental consent, or probable cause and exigent circumstances.

The Deschutes County Sheriffs Office has adopted this policy with callous disregard of Plaintiff S.G.'s rights under the 4th Amendment to remain free from unreasonable seizures and in violation of the 14th amendment substantive due process right of parents to direct the care of their children and rights to protect their children.

The custom and policies of the Deschutes County Sheriffs Office caused the unreasonable seizure of S.G. is a direct and proximate cause of the damages she suffered as alleged as above.

Count 5

**42 USC § 1983**

**Violation of 14th Amendment Substantive Due Process**

Camreta unreasonably removed the children from the care and control of Plaintiff Sarah Greene. Camreta's actions caused undue interference in the family relationship of all Plaintiffs.

The unreasonable action is a direct and proximate cause of damages as set forth herein above.

PAGE 14 of 18- COMPLAINT

Count 6

**42 USC § 1983**

**Malicious Prosecution By Bob Camreta**

Camreta intentionally presented false information to the Court to obtain the protective order to take custody of S.G. and K.G.

Camreta's actions were the direct and proximate cause of Plaintiffs' damages as set forth herein above.

Count 7

**42 USC § 1983**

**Violation of 14th amendment**

Camreta, Jane Doe, Bob Smit and the Center unreasonably interfered in right of the Plaintiffs to be together during the intrusive medical examination.

The unreasonable action of excluding Plaintiff Sarah Green is the direct and proximate cause of damages of Plaintiff Sarah Greene, Plaintiff S.G. and Plaintiff K.G., as set forth herein above.

Count 8

**42 USC § 1983**

**Punitive Damages**

Camreta, Alford, Jane Doe, Bob Smit, and the Center, acted with callous disregard to the family relationship of the Plaintiffs and in clear violation of the 4th amendment.

The Defendants' actions were egregious and beyond any level of acceptable social behavior.

PAGE 15 of 18- COMPLAINT

Their actions require an award of punitive damages in an amount to be determined by the jury.

Count 9

**Injunctive Relief**

Plaintiffs Sarah Greene, S.G., and K.G., ask that the Court issue an injunction against the Bend LaPine School District, preventing the school from seizing children from classrooms for non-school activities, without a warrant, parental consent, or probable cause and exigent circumstances.

Count 10

**Injunctive Relief**

Plaintiffs Sarah Greene, S.G., and K.G., ask that the Court issue an injunction against the Center, preventing them from conducting invasive physical exams of children without a warrant, other court order, parental consent, or probable cause and exigent circumstances. There is not a complete remedy at law, and an award of damages will not assure there will be no future violation.

Count 11.

**Attorney Fees**

Plaintiffs request attorney's fees pursuant to 42 USC § 1998. There is not a complete remedy at law, and an award of damages will not assure there will be no future violation.

# STATE CLAIMS

## False Imprisonment

Camreta and Alford confined Plaintiff S.G. to a small room for purposes of conducting their interrogation.

Defendant Camreta and Defendant Alford intended to confine Plaintiff S.G. for purposes of conducting an interrogation.

Plaintiff S.G. was aware that she was confined and that she was unable to leave.

The confinement of Plaintiff was unlawful.

Defendants' actions were the direct and proximate cause of the Plaintiff's injuries as set forth herein above.

## Intentional Infliction Of Emotional Distress On Sadie And Katherine

Defendant Camreta and Defendant Alford knew with certainty that their conduct would cause severe emotional distress to Plaintiff S.G.

Camreta and Alford's conduct in conducting the custodial interrogation, false imprisonment, and unreasonable search and seizure was outrageous and an extraordinary transgression of socially tolerable behavior.

PAGE 17 of 18- COMPLAINT

Camreta and Alford's conduct caused Plaintiff S.G. to suffer severe emotional distress.

Defendants' actions were the direct and proximate cause of the Plaintiffs' injuries as set forth herein above

Wherefore Plaintiffs pray for relief as follows:

1. For compensatory damages of not less than $50,000.00; and

2. For injunctive relief as requested herein; and

3. For punitive damages as appropriate; and

4. For attorney fees pursuant to 42 USC § 1988; and

5. For such other and further relief as the Court deems just.

DATED: February 23, 2005

*/s/ Mikel R. Miller*
Mikel R. Miller, OSB#91475
Attorney for Plaintiffs
(541) 388-9819

PAGE 18 of 18- COMPLAINT