HARDY MYERS
Attorney General
DAVID L. KRAMER  #80290
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 378-6313
Fax: (503) 378-2056
Email: david.kramer@state.or.us

Attorneys for Defendant Bob Camreta

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SARAH GREENE, personally and as next friend for S.G. a minor and K.G. a minor,<br><br>        Plaintiffs,<br><br>    v.<br><br>BOB CAMRETA; DESCHUTES COUNTY DEPUTY SHERIFF JAMES ALFORD; DESCHUTES COUNTY; JANE DOE; BOB SMIT; THE KIDS CENTER; THE BEND LAPINE SCHOOL DISTRICT; and TERRY FRIESEN,<br><br>        Defendants. | Case No. 05-CV-6047-AA<br><br>DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

## REMAINING ALLEGATIONS AFTER PLAINTIFFS' CONCESSIONS

Plaintiffs clarified and narrowed their claims against Defendant Camreta.[1] *See,* Plaintiffs'

Memorandum in Opposition, pages 10-13. The remaining claims are:

---

[1] As against Defendant Camreta, Plaintiffs have dismissed Count 6, conceding that they do not have sufficient facts to support a malicious prosecution theory. They also seem to concede that

Page 1 -    DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
                 SUMMARY JUDGMENT
                 DLK/cbh/TRIN5613.DOC

**Count 3:** On behalf of SG, only, alleging 4th and 14th Amendment violations for keeping SG in a private school room for a "two hour… custodial interrogation without a court order or probable cause and exigent circumstances" the school "interrogation" of SG.

**Count 5:** On behalf of all Plaintiffs, alleging 14th Amendment violations of the right to maintain a family relationship, as a result of the following transactions:

1. February 24, 2003: the school interview of SG.

2. March 10, 2003: the removal of SG and KG from their mother's custody.

3. March 20, 2003: the exclusion of the mother from the sex abuse examination of KG.

4. March 31, 2003: the exclusion of the mother from the sex abuse examination of SG.

**"False imprisonment" State law claim [unnumbered Count]** on behalf of SG for keeping SG in the school room during the interview of February 24, 2003. (This claim clarifies the unnumbered count first alleged at page 17 of the Complaint.)

**"Intentional infliction of emotional distress" State law claim [unnumbered Count]** on behalf of SG, for conducting the interview of February 24, 2003.

### PLEADING ISSUES

To the extent Count 5 alleges a constitutional violation on behalf of S.G., arising from her school interview on February 24, 2003, her claim should be dismissed as redundant to Count 3. FRCP 12(f).

### STATE LAW CLAIMS

Plaintiffs do not offer any points or authorities disputing Defendant Camreta's motion to dismiss the State law claims (false imprisonment and intentional infliction of emotional

---

Count 8 is redundant to other claims, except to the extent it adds a claim for punitive damages. Plaintiffs' Memorandum in Opposition, page 11.

Page 2 -   DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
DLK/cbh/TRIN5613.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

distress) because he is not a proper party pursuant to the Oregon Tort Claims Act, and because

the State has Eleventh Amendment immunity. Those claims, therefore, should be dismissed as to

Defendant Camreta.

### ISSUES OF "MATERIAL" FACT – OR LACK THEREOF

#### A. The School Interview Was Not "Coercive"

Plaintiffs repeatedly argue that the school interview of S.G. was somehow "coerced"

or "coercive". *See*, Plaintiffs' Reply to Defendant Alford's Concise Statement of Material Facts,

¶16; Plaintiffs' Reply to Defendant Camreta's Concise Statement of Material Facts, ¶5.

Two of the three witnesses to the school interview (the only adults) described a

routine, child-friendly interview of a suspected sex abuse victim. *See*, Affidavit of Camreta, ¶5

and Exhibits 2 and 3. The testimony of the third and remaining witness, S.G., does nothing to

advance Plaintiffs' claim of coerciveness. Even in her summary judgment affidavit, the only

points arguably related to coerciveness (or lack thereof) are the following:

a. She was 9 years old at the time of the interview and in the Fourth Grade. Affidavit of S.G., ¶3

b. The school counselor, Ms. Friesen, escorted her from her class room. In the words of the affidavit, she, "delivered into the custody of two men I did not know. One was an armed police officer." And that "No one explained to me why I was there." Affidavit of S.G., ¶5

c. "Camreta, started asking me questions, like he was trying to be my friend or something. He started asking me if my dad touched me." Affidavit of S.G., ¶7.

d. She told him that her dad touched her all over, but that they were "good touches". Affidavit of S.G., ¶s 8-9.

e. She denied saying her dad touched her in a bad way, but, "For over an hour, Bob Camreta kept asking me the same questions, just in different ways, trying to get me to change my answers. Finally, I just started saying yes to whatever he said." Affidavit of S.G., ¶9

Even if taken as true, her affidavit fails to establish any form of coercion. Plaintiffs' reliance on

*In the Matter of David Wayne Killitz*, 59 Or App 720, 651 P2d 1382 (1982), does not advance

Page 3 -   DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
DLK/cbh/TRIN5613.DOC

their argument that the interview was coercive. *Killitz* was a criminal proceeding in Juvenile Court. The Oregon Court of Appeals held that a juvenile *crime suspect* who was interviewed by police in a school principal's office about a burglary was in a custodial situation and was entitled to a *Miranda* warning. *Id.* at 59 Or. App. 722. The State Court said:

> In *State v. Paz*, 31 Or App 851, 572 P2d 1036 (1977), this court set forth criteria for determining when an interrogation is custodial: (1) whether defendant could have left the scene of the interrogation voluntarily; (2) whether defendant was being questioned as a suspect or merely as a witness; and (3) whether defendant freely and voluntarily accompanied the officer to the place of questioning.

*Id.* at 59 Or. App. 723. The undisputed facts in this case are that SG was being interviewed in her school as a witness – that is, in her [then] admitted status as a potentially abused child – and not as a crime suspect. The criteria affirmed in *Killitz,* then establishes that Defendant Camreta's interview was not even a "custodial interrogation," let alone coercive.

More significantly, key points in S.G.'s affidavit are at odds with her deposition testimony. Plaintiffs now say SG has, "no idea what statements she made to Defendant Camreta" regarding alleged abuse. Plaintiffs' Reply to Defendant Camreta's Concise Statement of Material Facts, ¶20. Plaintiffs would also have the Court conclude that, "No one really knows what was really said because the interview was not tape recorded." Plaintiffs' Reply to Defendant Camreta's Concise Statement of Material Facts, ¶5. These propositions are simply untrue.

When affidavit testimony conflicts with that given in deposition, a court is wise to conclude that the deposition is the more reliable reservoir of facts, and should simply disregard the affidavit, which is neither the product of an adversary process nor, almost certainly, the product of affiant's own statements. *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995); *Pries v. Honda Motor Company,* 31 F.3d 545 (7th Cir. 1994); *Dardanell v. Target Stores*, 16 F.3d 174 (7th Cir. 1994); *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 266-67 (9th Cir. 1991); *Barwick v. Celotex*, 736 F.2d 946 (4th Cir. 1984); *McMellon v. Safeway Stores, Inc.*, 945 F. Supp.

Page 4 -   DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
DLK/cbh/TRIN5613 DOC

1402 (D. Or. 1996); *Montgomery v. J.R. Simplot Co.*, 916 F. Supp. 1033, 1037 (D. Or. 1994); *Sullivan v. Massachusetts Mutual Life Ins. Co.*, 802 F. Supp. 716 (D. Conn. 1992). The rationale to disregard affidavit testimony is particularly strong, where, as there is in this case, conflicting information in the affidavit is so obviously drafted by someone other than the child witness.

In deposition, S.G. repeatedly testified she had a poor memory, but that her mother helped her remember things. Affidavit of Kramer, Exhibit 1 (excerpts from the deposition of S.G.), pages 6-7. Ms. Friesen, the school counselor who escorted her from class, was someone S.G. liked, trusted, and thought to be a "nice person". *Id.*, page 11. There was nothing embarrassing to S.G. about being removed from the classroom. *Id.*, page 12. She saw the policeman in the room, but at the same time, she trusted police, they had always been nice to her, she was comfortable with them, she understood they would protect her from others who might hurt her, and she found this officer to be nice and not scary. *Id.*, page 14. For the most part, she could not remember what Mr. Camreta said to her during the interview. *Id.*, Exhibit 1, page 16. He started the interview with questions like, "so how is your family life like." *Id.*, page 18. She testified in deposition that she was scared – not necessarily because of anything the adults did or said, but because when they asked her about abuse by her father, she felt "I didn't know what to do". *Id.*, page 24. She never complained about feeling sick, or being scared or needing to go to the bathroom. She never asked to speak with school staff, her mother, or her father; she never cried and was never threatened. *Id.*, page 18-20, 22. S.G. admitted that she told the interviewers she had been sexually abused by her father. *Id.*, pages 41-43.) S.G. further testified that she recanted the allegations about her father days later, after her mother told her that the allegations were "lies". *Id.* at 87-88. S.G. testified she lied about the abuse, "just to get out of the room." *Id.* at 42-43. S.G. testified that this "lie" took about 30 minutes to tell; however S.G. did not recall any details of what she or anyone else said during the interview. *Id.* at 46-47.

On this record, it is abundantly clear that S.G. remembers nothing coercive of the school interview, but clearly remembers she disclosed that her father had sexually abused both

Page 5 - DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
DLK/cbh/TRIN5613.DOC

her and her sister. Whether S.G. was afraid during the interview, or lied to protect her father, makes this case particularly sad. But it does not make the interview coercive and does not change the fact that sexual abuse was disclosed. Given the disclosures of sexual abuse, and given that the abuser was then known to have abused another child, nothing Defendant Camreta did was unreasonable, let alone unconstitutional.

B. **Nimrod Greene, the Subject of the Criminal Investigation and Child Protective Services Assessment, Was a Child Sex Offender.**

Plaintiffs place great emphasis on the fact that the alleged abuser, Plaintiff Sarah Greene's husband, was convicted of child sex abuse based on an "Alford plea", otherwise known in Oregon as a "no contest" plea. This point is true, but absolutely inconsequential. Or. Rev. Stat. § 135.345 provides that a judgment following entry of a no contest plea is a conviction of the offense to which the plea is entered. The undisputed fact is that Defendant Camreta was investigating whether a reported, and ultimately convicted, child sex abuser had also targeted his own daughters. This is an inherently reasonable inquiry. Nothing in the admissible facts in this record support Plaintiffs implied assertion that Defendants were investigating an innocent man, or that Nimrod Greene was someone who should not be considered a threat to children.

C. **There is No Competent Evidence in This Record That Defendant Camreta's Actions Were Professionally Unreasonable, Let Alone Unlawful.**

Plaintiffs did not file any affidavit or declaration from a qualified professional suggesting Defendant Camreta failed to reasonably conduct himself as a child protective services worker. Plaintiffs do not cite the Court to any points or authorities to dispute Defendant Camreta's claim that his actions were specifically authorized by State statutes and administrative rules.[2]

---

[2] These statutes and rules were previously cited in Defendant Camreta's Memorandum in Support of Summary Judgment, at pages 5-6.

Page 6 -    DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
DLK/cbh/TRIN5613.DOC

## JUDICIAL (QUASI-JUDICIAL) IMMUNITY

Plaintiffs' arguments do not address Defendant Camreta's quasi-judicial immunity defense. The Ninth Circuit holds that a social worker is entitled to absolute, judicial immunity against Fourth and Fourteenth Amendment claims for investigating alleged child abuse and also for presenting related evidence to the State Court in a child dependency action. *Doe v. Lebbos et. al.*, 348 F.3d 820 (9th Cir. 2003). The immunity is absolute, and even extends to allegations that the investigator fabricated evidence or failed to discover exculpatory evidence in the course of a negligent investigation. *Id.*, at 826. It follows that judicial, or quasi-judicial immunity, bars all of Plaintiffs' clams.

These facts are undisputed. Defendant Camreta was investigating a child abuse action for presentation to the State Juvenile Court. He took and kept custody of the children, during all material times on or after March 10, 2003, pursuant to a State Court Order. The medical examinations were specifically Ordered by the State Court. DHS had the statutory authority to establish visitation times between the mother and children, and those times did not include the time of the examinations. Given those undisputed facts, judicial immunity certainly bars any claim arising from those transactions.

## QUALIFIED IMMUNITY

**A. School Interview.** Plaintiffs argue that Defendant Camreta's school interview violated "clearly established law" and thus, they argue, he loses his right to qualified immunity. Plaintiffs are wrong.

Plaintiffs rely on *Doe v. Heck*, 227 F.3d 492 (7th Cir. 2003) to support their argument.[3] As discussed in Defendant Camreta's opening memorandum, *Doe v. Heck* holds that a CPS worker

---

[3] As noted in the affidavit of counsel filed herewith, Plaintiffs have failed to respond to interrogatories specifically asking for citations to authorities supporting their claim that "clearly established law" precluded the school interview. In conferral, Plaintiffs' counsel conceded there was none, and that he was trying to establish "new law". See, Affidavit of Kramer. Obviously, Plaintiffs have changed their position as to whether such authorities exist.

Page 7 -    DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
            SUMMARY JUDGMENT
            DLK/cbh/TRIN5613 DOC

is entitled to qualified immunity for the custodial interrogation of a possible child victim, without parental consent, even over the objections of the school's principal. *See, Doe v. Heck, supra,* 327 F.3d at 516-517.

*Doe v. Lebbos et al., supra,* 348 F.3d 820 (9th Cir. 2003) is even more informative on the issue of qualified immunity. In *Lebbos,* the Ninth Circuit acknowledged that under certain circumstances, removing a child from parental custody could give rise to a Fourth Amendment claim in favor of the child, and a Fourteenth Amendment claim in favor of the parent. (The Court noted that both claims require the same constitutional analysis.) The constitutional rationale is that parents should not be separated from their children without due process of law, except in emergencies – that is, upon information such that provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury. 348 F.3d 820, 827-828. However, the Court went on to hold that taking a child into temporary custody is lawful when there is cause to believe a child is in imminent danger when a social worker has reason to believe a child has been neglected or abused. To that end, a social worker does not violate the Constitution, and has qualified immunity, for detaining a child even for a period of three days, when there is evidence of abuse or neglect. 348 F.3d at 827.

Here, it is undisputed that Defendant Camreta had information, before the school interview, that S.G.'s father had sexually abused another child recently. That is compelling information that he may have abused his own children, and that they were in danger of further abuse. Indeed, that suspicion was confirmed by S.G.'s [now recanted] statements regarding just such abuse. Finally, it is undisputed that Or. Rev. Stat. § 419B.045 specifically authorizes that reports of suspected child abuse may be conducted on public school premises.

Given the undisputed facts relating to the pending child abuse investigation by police and DHS, including the status of S.G.'s father as an abuser of other children, a social worker who "removes" a child from his/her classroom to the principal's office for a victim interview is

Page 8 -    DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
DLK/cbh/TRIN5613 DOC                    Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

entitled to qualified immunity under *Doe v. Lebbos et al., supra,* even if it is assumed that it otherwise violates the Fourth Amendment. The case for immunity is even stronger where, as here, the social worker is authorized to do school interviews, and is obliged to investigate all reports of suspected abuse or neglect. 348 F.3d at 827-29. *See Also,* Or. Rev. Stat. §419B.015 through Or. Rev. Stat. §419B.020.

**B. Sex Abuse Examination.** Referring a child for a sex abuse examination is constitutional in three circumstances: (a) when a parent consents; (b) when there is a court order; or (3) when there is a reasonable concern that material physical evidence might dissipate or that some urgent medical problem exists requiring immediate attention. *Doe v. Lebbos et al., supra,* 348 F.3d at 828-829, citing *Wallis v. Spencer,* 202 F.3d 1126, 1141, n11 (9th Cir. 2000).

There are no authorities cited by Plaintiffs to support the contention that S.G.'s mother had a Constitutional right to attend the examination. It is undisputed that at the time of the examinations, the State Court had removed custody from her and placed it with DHS. This placed DHS, not the mother, in the position of making decisions for the children, including: decisions regarding parent visitation and decisions regarding whether a parent should participate in a child abuse interview. *See,* O.R.S. 419B.337, O.R.S. 419B.373, O.A.R. 413-015-0779(4), and the Affidavit of Camreta, ¶14. It is also undisputed that the visitation in this particular case did not include the right to visit during the time of the medical examination. Finally, and most importantly, it is undisputed that Defendant Camreta was executing a State Court Order to the extent he facilitated the sex abuse examinations of the children.

Under these circumstances, there is no constitutional violation of the right to family association by proceeding with the examination, even over the parent's consent. To the extent Sarah Greene was separated from her daughters, the separation was a function of these authorities and the State Court's custody order. Even if there were a constitutional violation, Defendant Camreta would be immune because he was acting pursuant to Court Order.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

## CONCLUSION

On this record, Defendant Camreta is entitled to dismissal of all claims as a matter of law.

DATED this ___ day of January, 2006.

                                  Respectfully submitted,

                                  HARDY MYERS
                                  Attorney General

                                  DAVID L. KRAMER #80290
                                  Assistant Attorney General
                                  Trial Attorney
                                  Tel (503) 378-6313
                                  Fax (503) 378-2056
                                  david.kramer@doj.state.or.us
                                  Of Attorneys for Defendant Camreta

Page 10 - DEFENDANT CAMRETA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
            SUMMARY JUDGMENT
            DLK/cbh/TRIN5613.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

## CERTIFICATE OF SERVICE

I certify that on January 19, 2006, I served the foregoing DEFENDANT CAMRETA'S

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT upon

the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Mikel R. Miller<br>Law Office of Mikel R. Miller, P.C.<br>26 NW Hawthorne Ave<br>Bend OR 97701<br>    Of Attorneys for Plaintiffs | ___ HAND DELIVERY<br> x  MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX) **(541) 317-4987**<br>___ E-MAIL **mike@lawofficeofmikelrmiller.com**<br> X  E-FILE |
| Mark Amberg<br>Deschutes County Legal Counsel<br>1300 NW Wall St Ste 200<br>Bend OR 97701<br>    Of Attorneys for Deschutes County | ___ HAND DELIVERY<br> x  MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX) **541 617-4748**<br>___ E-MAIL **mark_amberg@co.deschutes.or.us**<br> x  E-FILE |
| Mark H Wagner<br>Hoffman Hart & Wagner LLP<br>1000 SW Broadway Ste 2000<br>Portland OR 97205<br>    Of Attorneys for Bend-Lapine School<br>    District | ___ HAND DELIVERY<br> x  MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX) **503 222-2301**<br>___ E-MAIL **mhw@hhw.com**<br> X  E-FILE |

DAVID L. KRAMER #80290
Assistant Attorney General
Trial Attorney
Of Attorneys for Defendant Camreta
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 378-6313

cc:    Foster A. Glass

Page 1 -   CERTIFICATE OF SERVICE
           DLK/cbh/TRIL1191