IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH GREENE, personally                    Civ. No. 05-6047-AA
and as next friend for S.G.,
a minor, and K.G., a minor,                    OPINION AND ORDER

            Plaintiff,

      v.

BOB CAMRETA; DESCHUTES COUNTY
DEPUTY SHERIFF JAMES ALFORD;
DESCHUTES COUNTY; JANE DOE; BOB
SMIT; THE KIDS CENTER; THE BEND-
LaPINE SCHOOL DISTRICT; and TERRY
FRIESEN,

            Defendants.
_____

Mikel R. Miller
Law Office of Mikel R. Miller, P.C.
26 N.W. Hawthorne
Bend, Oregon 97701
      Attorney for plaintiff


1    - OPINION AND ORDER

Hardy Myers
Attorney General
David L. Kramer
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301
        Attorneys for defendant Bob Camreta

Mark P. Amberg
Christopher D. Bell
Deschutes County Legal Counsel
1300 N.W. Wall Street, Suite 200
Bend, Oregon 97701
        Attorneys for defendants Deschutes County Deputy Sheriff James
        Alford and Deschutes County

Mark H. Wagner
Kari A. Furnanz
Hoffman, Hart & Wagner, LLP
1000 S.W. Broadway, 20th Floor
Portland, Oregon 97205
        Attorneys for defendants Terry Friesen and Bend-LaPine School
        District

AIKEN, Judge:

        Plaintiff filed this suit on behalf of herself and her minor
children, S.G. and K.G., pursuant to 42 U.S.C. § 1983, alleging
that defendants violated their constitutional rights under the
Fourth and Fourteenth Amendments to the United States Constitution.
Plaintiff also alleges state law claims of false imprisonment and
intentional infliction of emotional distress against defendants Bob
Camreta and Deschutes County Deputy Sheriff James Alford. Pursuant
to the court's Opinion and Order dated September 22, 2005,
defendants Bob Smit and the KIDS Center are no longer parties to
this action.  All remaining defendants now move for summary
judgment on each of plaintiffs' claims pursuant to Fed. R. Civ. P.

2     - OPINION AND ORDER

56©).  For the following reasons, defendants' motions are granted.

<u>BACKGROUND</u>

On February 12, 2003, Nimrod Greene, plaintiff's husband and the father of S.G. and K.G., was arrested for suspected sexual abuse of F.S, a seven-year-old child.

On February 20, 2003, the Oregon Department of Human Services (DHS) received a report from the Deschutes County Sheriff's Office describing the circumstances of Greene's arrest and reporting possible sexual abuse of S.G. and K.G. by Greene.

On February 21, 2003, Bob Camreta, a Child Protective Services (CPS) caseworker for DHS, learned that Greene had been released on bail and was at home having unsupervised contact with S.G. and K.G, who were nine and five years old at the time, respectively.

On February 24, 2003, Camreta interviewed S.G. at her public elementary school.  Camreta was attempting to assess whether S.G. and K.G. had been abused by Greene, and he did not seek or obtain parental consent for the interview.  Upon Camreta's request, defendant Terry Friesen, a female counselor at Elk Meadow Elementary School, walked to S.G.'s classroom and asked S.G. to accompany Friesen so that someone could talk to her.  S.G. complied, and Friesen brought her to another room where defendants Camreta and Deputy Alford were present.  Friesen then left the room.

For approximately one to two hours, S.G. sat at a table with

3    - OPINION AND ORDER

Camreta while he interviewed her. According to Camreta, S.G. disclosed that she had been sexually abused by her father at her home, and that the last time it occurred was "last week." Affidavit of Bob Camreta (Camreta Aff.), ¶ 5. S.G. stated that the "touching" occurred after her father had been drinking alcohol, and that S.G. had told plaintiff about the touching. Id. and Ex. 3.

After the interview, Camreta, accompanied by Deputy Alford, spoke with plaintiff and Greene about S.G.'s statements. Both parents denied sexual abuse, but plaintiff agreed to a safety plan requiring that Greene not have unsupervised contact with the children pending an investigation. The plan also provided that S.G. would undergo a sexual abuse examination at the KIDS Center, a medical center specializing in child sex abuse. Camreta advised plaintiff not to discuss the alleged abuse with S.G. or K.G.

On March 6, 2003, an indictment was returned charging Greene with six counts of felony sexual abuse in the first degree against F.S. and S.G. Following the indictment, Greene was released pursuant to a court-ordered agreement, dated March 19, 2003, requiring that he have no contact with children, including S.G. and K.G.

On March 7, 2003, Camreta went to plaintiff's home to assess whether she would comply with the no-contact order. Plaintiff stated to Camreta that the charges were a lie, that she had hired an attorney to defend her husband, and that she had talked to S.G.

about the alleged abuse.  Plaintiff told Camreta that she had no extra resources for alternative housing for Greene and would not sign the information release form for the sexual abuse examination. Plaintiff asserts that she did, however, also tell Camreta that Greene would have no contact with the children and that she would find alternative housing regardless of the cost.

On March 11, 2003, Camreta successfully petitioned the Deschutes County Juvenile Court for an order to place S.G. and K.G. in protective custody.  The same day, S.G. and K.G. were taken into DHS custody pursuant to the court order.

On March 12, 2003, the Deschutes County Juvenile Court held an Emergency Shelter Hearing, at which plaintiff, Greene, and their attorneys appeared.  Following the hearing, the court issued an order keeping the children in state custody and ordering sexual abuse examinations of both S.G. and K.G.

The children were in state custody from March 11, 2003, through March 31, 2003, and during that time plaintiff's contact with them was limited to pre-arranged, supervised visitation, and she was not allowed to be present during their evaluation at the KIDS Center.  K.G. was interviewed and examined on March 20, 2003, and S.G. was examined on March 31, 2003.  During her examination, K.G. informed doctors that S.G. had lied about the sexual abuse allegations, because she overheard plaintiff telling S.G. that she had lied. Camreta Aff., Ex. 10, p. 9.  Ultimately, the KIDS Center

5    - OPINION AND ORDER

evaluators were unable to determine if S.G. and K.G. had been sexually abused, and S.G. recanted the statements she had previously made to Camreta.

On March 31, 2003, a hearing was held at the Deschutes County Juvenile Court, which Camreta, plaintiff, Greene, and their attorneys attended, along with an attorney for S.G. and K.G.  The court ordered that S.G. and K.G. be returned to the custody of their mother at the request of all parties present at the hearing.

On February 24, 2005, plaintiff filed this action.

<u>STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©).  The materiality of a fact is determined by the substantive law on the issue.  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.</u>, 809 F.2d 626, 630 (9th Cir. 1987).  The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a

genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

<u>DISCUSSION</u>

A. Fourth Amendment Claims

1. Individual Defendants

In Counts 1 and 3, plaintiff alleges that defendants Camreta, Deputy Alford, and Friesen violated S.G.'s right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution when S.G. was interviewed at her school.

Under the Fourth Amendment, a seizure occurs when an individual's freedom of movement is restrained by physical force or show of authority. United States v. Mendenhall, 446 U.S. 544, 553 (1980). A person has been "seized" only if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." Id. at 554. Thus, an objective standard applies in determining whether a seizure occurred. See id. at 554-55.

7    - OPINION AND ORDER

I find that the evidence presented supports a finding that S.G. was seized. S.G. was escorted from her classroom by her school counselor and taken to a room where she was interviewed for approximately one to two hours by a CPS caseworker in the presence of a sheriff's deputy. Although plaintiff presents no evidence that defendants had any physical contact with S.G., told S.G. she was not free to leave, or suggested she could not leave, I question whether any reasonable nine-year old would believe that she was free to leave under those circumstances. See Doe v. Heck, 327 F.3d 492, 510 (7th Cir. 2003) (removal of 11-year old boy from classroom and questioning by caseworkers and uniformed police officer constituted seizure under the Fourth Amendment).

However, I do not find that the seizure of S.G. was unreasonable in light of the circumstances and the information known to Camreta. A seizure violates the Fourth Amendment only if it is objectively unreasonable in light of the facts and circumstances confronting the defendants, regardless of subjective intent or motivation. See Graham v. Connor, 490 U.S. 386, 397 (1989) (citing Scott v. United States, 436 U.S. 128, 137-39 (1978)). A seizure is reasonable if it was "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968).

For example, in Doe v. Bagan, a child, Doe, brought suit under

§ 1983 after a social services worker questioned him for his alleged sexual abuse of another child. 41 F.3d 571, 573 (10th Cir. 1994). The social services worker interviewed Doe alone in the principal's office for approximately ten minutes with the door closed. Id. at 574. The Tenth Circuit found that this seizure was reasonable as a matter of law. Id. at 574 n.3. Specifically, the court found that the seizure was justified at its inception because the abused child specifically identified Doe as her abuser and that the interview was reasonably related in scope to determine Doe's involvement in the incident. Id.

Likewise, I find that the interview of S.G. was justified at its inception. It is undisputed that defendants were responding to the recent arrest of Greene for sexually abusing another child, along with information suggesting that S.G. and K.G. were being sexually abused by Greene and that plaintiff had knowledge of the abuse. Camreta Aff., Ex. 2, p. 1. Thus, the information known to Camreta and Deputy Alford gave rise to reasonable suspicion that the children had been abused or were in danger of being abused. See Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000). Further, Camreta and Deputy Alford received permission from school officials to speak with S.G. regarding the alleged abuse.

I also find that the scope of the interview was reasonably related to determining whether such abuse had occurred. Given S.G.'s statements and disclosures regarding sexual abuse by Greene

9    - OPINION AND ORDER

and plaintiff's knowledge of that abuse, it is not unreasonable that the interview lasted one to two hours. Camreta was not only attempting to protect S.G. from possible sexual abuse, he was fulfilling his statutory duty to investigate suspected sex abuse of a minor. See Or. Rev. Stat. § 419B.020 (requiring DHS or law enforcement to investigate a claim of child abuse immediately after a report has been made); Camreta Aff., ¶ 2. For the same reasons, defendants Friesen's and Deputy Alford's actions to facilitate this interview were likewise reasonable. Therefore, even though S.G. was seized, I find that the seizure was objectively reasonable under the facts and circumstances of this case.

Moreover, defendants Camreta, Deputy Alford, and Friesen are entitled to qualified immunity. Assuming a constitutional violation occurred, the court considers two issues: (1) whether the law governing the official's conduct was clearly established; and (2) whether, under that law, a reasonable official could have believed his or her conduct was lawful. Mena v. City of Simi Valley, 226 F.3d 1031, 1036 (9th Cir. 2000); see also Saucier v. Katz, 533 U.S. 194, 201 (2001). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Oregon law expressly permits CPS workers to interview a child at school "when the worker believes it will be the best environment in which to make contact with the child." Or. Admin. R. 413-015-

0610.  While the school administrator must be notified of such an interview, Oregon law does not always require notice to the child's parents.  <u>See</u> Or. Rev. Stat. § 419B.045 (requiring notice to the school administrator, but failing to require any notice to the child's parents); <u>see also</u> Or. Admin. R. 413-015-0405(8) (giving CPS employees discretion not to notify parents of an interview when notification could compromise the child's safety or a criminal investigation).

Given this statutory and administrative authority, I find as a matter of law that a reasonable official could believe his or her actions pursuant to this authority are within constitutional bounds.  <u>Heck</u>, 327 F.3d at 516.  Plaintiff raises no challenge to any of these statutes or administrative rules, and the court finds no reported decision rendering them unconstitutional.  <u>Id.</u> Therefore, when Friesen, Camreta, and Deputy Alford seized and interviewed S.G., no reasonable school official, caseworker, or police officer would have believed these actions violated the Fourth Amendment.  Therefore, plaintiff's Fourth Amendment claims against defendants Camreta, Deputy Alford, and Friesen brought on behalf of S.G. are dismissed.

<u>2. Defendants Deschutes County and Bend-LaPine School District</u>

In Counts 2 and 4, plaintiff alleges that Deschutes County and Bend-LaPine School District each have a custom and policy of "seizing children from classrooms and subjecting them to custodial

11   - OPINION AND ORDER

police interrogations without a warrant, parental consent, or probable cause and exigent circumstances" that violated S.G.'s Fourth Amendment rights.

A local government entity may be held liable under § 1983 if the entity itself causes the constitutional violation. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>see also</u> <u>Bd. of the County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997). Thus, plaintiff cannot rely on theories of respondeat superior or vicarious liability to recover against defendants. <u>Brown</u>, 520 U.S. at 403; <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1141 (9th Cir. 2001). Rather, plaintiff's § 1983 claim survives only where the alleged constitutional deprivation was inflicted in "execution of a government's policy or custom." <u>Monell</u>, 436 U.S. at 694.

However, plaintiff fails to establish a violation of S.G.'s Fourth Amendment rights or produce evidence that either Deschutes County or the School District has an official policy or custom that authorizes custodial police interrogations as alleged by plaintiff. Likewise, plaintiff fails to show the existence of a widespread practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 111, 168 (1970)). Accordingly, plaintiff's Fourth Amendment claims brought against Deschutes County and Bend-LaPine School District on behalf of S.G. are dismissed.

B. Fourteenth Amendment Claims

Plaintiff next alleges that defendants Deschutes County, Bend-LaPine School District, and Camreta violated plaintiff and her children's substantive due process rights under the Fourteenth Amendment to be free from unreasonable interference with the family relationship.  Specifically, in Counts 2 and 4, plaintiff alleges that Deschutes County's and the School District's customs and policies of seizing and questioning students violated plaintiff's and S.G.'s Fourteenth Amendment rights.

However, plaintiff cannot obtain relief on behalf of S.G. through a substantive due process claim under the Fourteenth Amendment when the challenged conduct falls under a more specific constitutional right.  Albright v. Oliver, 510 U.S. 266, 272-75 (1994); Graham, 490 U.S. at 394-95.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  Albright, 510 U.S. at 273 (quoting Graham, 490 U.S. at 395).  Here, the issue of whether Deschutes County and the School District have unconstitutional policies of seizing students for questioning without parental consent implicates S.G.'s Fourth Amendment rights.[1]

_____

[1]In Count 3 of her Complaint, plaintiff alleges that Camreta's interview of S.G. at school violated S.G.'s Fourth Amendment rights.  However, in her response to defendants'

With respect to the alleged violation of plaintiff's Fourteenth Amendment rights, as discussed above, plaintiff presents no evidence that either the School District or Deschutes County has a policy or custom permitting the questioning of children without parental consent that unreasonably interferes with a parent's rights to control the care of a child. While the School District admits that it facilitates law enforcement interviews of students, this policy is contemplated and endorsed by state law. Or. Rev. Stat. § 419B.045. Moreover, the "right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." Manzano v. South Dakota Dep't of Soc. Servs., 60 F.3d 505, 510 (8th Cir. 1995) (internal quotation marks and citation omitted); see also Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir. 1999) ("An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse."). Accordingly, plaintiff's Fourteenth Amendment substantive due process claims against Bend-LaPine School District and Deschutes County brought on behalf of herself and S.G. must be dismissed.

In Counts 5 and 7, plaintiff argues that defendant Camreta

---

motions for summary judgment, she states that Count 3 also alleges a Fourteenth Amendment violation. As discussed above, I find that plaintiff cannot pursue a substantive due process claim on behalf of S.G. because the school interview is properly evaluated under the Fourth Amendment. Therefore, I construe Count 3 as alleging only a Fourth Amendment violation.

unreasonably interfered in the family relationship of plaintiff, S.G., and K.G. by:  (1) removing S.G. and K.G. from plaintiff's custody, and (2) denying plaintiff's request to be present with S.G. and K.G. during the children's physical examinations at the KIDS Center.[2]

It is well-settled that parents and children possess a constitutional right to be together without governmental interference.  <u>Santosky v. Kramer</u>, 455 U.S. 745, 753 (1982); <u>Stanley v. Illinois</u>, 405 U.S. 645 (1972); <u>Pierce v. Soc'y of Sisters</u>, 268 U.S. 510, 534-35 (1925); <u>Meyer v. Nebraska</u>, 262 U.S. 390 (1923).  "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency."  <u>Wallis</u>, 202 F.3d at 1136.  Here, however, plaintiff received due process of law, because S.G. and K.G. were removed from her custody pursuant to a court order, and plaintiff was given the opportunity to be heard at the custody hearing.

Moreover, I find that Camreta is entitled to quasi-judicial immunity for his actions.  A CPS worker such as Camreta is accorded absolute quasi-judicial immunity from liability for damages

---

[2] Plaintiff also alleged a Fourteenth Amendment claim against a Jane Doe defendant based on her participation in the medical examinations of S.G. and K.G.  However, plaintiff failed to identify this defendant or present facts or argument supporting the claims against her.  Therefore, plaintiff's claims against defendant Jane Doe are dismissed.

stemming from the worker's apprehension of a child pursuant to a valid court order.  <u>Coverdell v. Dep't of Soc. & Health Servs.</u>, 834 F.2d 758, 762 (9th Cir. 1987); <u>Abdouch v. Burger</u>, 426 F.3d 982, 989 (8th Cir. 2005).  "The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." <u>Coverdell</u> 834 F.2d at 765.

Here, it is undisputed that Camreta removed S.G. and K.G. from plaintiff's custody to enforce the court order granting protective custody of the children to the state.  Although plaintiff argues that Camreta obtained the court order by presenting false information to the court and deliberately misrepresenting S.G.'s statements, plaintiff presents no evidence to support these allegations.  Furthermore, plaintiff had an opportunity, with counsel, at the March 12, 2003, hearing to challenge the evidence presented in support of the court order.

Likewise, Camreta is entitled to immunity for excluding plaintiff from S.G. and K.G.'s medical examinations.  Plaintiff did not have legal custody of the children at the time, the court ordered the examinations of S.G. and K.G., and plaintiff's exclusion from the examinations conformed with Oregon statutory and administrative law.  <u>See</u> Or. Rev. Stat. § 419B.337 (stating that after a child is placed in state custody, DHS has discretion in the planning and provision of care, supervision, and services); Or. Admin. R. 413-015-0720(4) (allowing DHS workers to exclude an

16  - OPINION AND ORDER

abused child's parent if the parent's presence may impede the interview). Accordingly, plaintiff's Fourteenth Amendment claims against Camreta brought by plaintiff and on behalf of herself, S.G. and K.G. are dismissed.

C. State Law Claims

Finally, plaintiff alleges state law claims of false imprisonment and intentional infliction of emotional distress (IIED) against defendants Camreta and Deputy Alford based on their interview of S.G. at school.[3]

Pursuant to the Oregon Tort Claims Act (OTCA), Or. Rev. Stat. §§ 30.260-.300, a lawsuit alleging a tort committed by a public body or by its officers, employees, or agents acting within the scope of employment must be brought against the public body only. Id. § 30.265(1). A "public body" includes the state, as well as counties, cities, school districts, and other similar entities. See id. § 30.260(4). When a tort claim is brought against public employees for actions taken within the scope of their employment, the public body shall be substituted as the only defendant. Id. § 30.265(1); see also Ctr. for Legal Studies, Inc. v. Lindley, 64 F. Supp. 2d 970, 974-76 (D. Or. 1999). Plaintiff has not disputed that both Camreta and Deputy Alford were acting within the scope of their employment. Therefore, in accordance with the OCTA, the

---

[3]Plaintiff has agreed to dismiss her claim of malicious prosecution alleged against defendant Camreta in Count 6 of her Complaint.

State of Oregon and Deschutes County are substituted as the proper defendants in place of Camreta and Deputy Alford with respect to plaintiff's state law claims.

Upon substitution, plaintiff's tort claims against the State of Oregon based on Camreta's actions must be dismissed under the Eleventh Amendment to the United States Constitution.  It is well established that a State is immune from claims brought in federal court by a citizen unless the State has given unequivocal consent to be sued or Congress has abrogated the immunity.  See, e.g., Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540-542 (2002); College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984).  While the State of Oregon has consented under the OTCA to be sued for certain torts in state court, it has not consented to be sued for such claims in federal court.  See Or. Rev. Stat. § 30.265(1); see also Blair v. Toran, 1999 WL 1270802 (D. Or. Dec. 2, 1999).  Therefore, plaintiff's state law claims against the State of Oregon on behalf of S.G. are dismissed.

Plaintiff's state law claims against Deschutes County must be dismissed as well.  In general, Eleventh Amendment immunity does not apply to counties and similar municipal corporations.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); but see Pennhurst, 465 U.S. at 123 n.34 (describing cases

where immunity applies because the relief obtained runs against the State).  However, plaintiff fails to show a genuine issue of material fact as to S.G.'s claims of false imprisonment and IIED.

First, to establish a claim of false imprisonment, plaintiff must show that:  (1) Deputy Alford confined S.G.; (2) Deputy Alford intended the acts that caused the confinement; (3) S.G. was aware of the confinement; and (4) the confinement was unlawful.  Hiber v. Creditors Collection Serv. of Lincoln County, Inc., 154 Or. App. 408, 413, 961 P.2d 898, rev. denied, 327 Or. 621, 971 P.2d 413 (1998).  Confinement may be created through actual force or through threats, which may be by conduct or words.  Lukas v. J.C. Penney Co., 233 Or. 345, 353, 378 P.2d 717 (1963).  "If the words or conduct are such as to induce a reasonable apprehension of force and the means of coercion are at hand, a person may be . . . effectively restrained."  Id.

Here, plaintiff fails to present any evidence creating a genuine issue of material fact that Deputy Alford confined S.G. or intended to do so.  First, S.G.'s deposition reveals that Deputy Alford treated S.G. nicely, that he did nothing to scare her, and that she trusted him.  Furnanz Aff., Ex. C, pp. 25-26.  Deputy Alford also did not take any part in the interview; he simply "sat there in the room."[4]   Furnanz Aff., Ex. C, p. 149.  Further,

---

[4] Plaintiff argues that Deputy Alford still had a duty to intervene in Camreta's interview to stop the violation of S.G.'s Fourth Amendment rights.  However, because there was no violation

plaintiff presents no evidence of any physical contact or coercive behavior on Deputy Alford's part, and his mere presence as a police officer does not create coercion or confinement.  See Florida v. Royer, 460 U.S. 491, 498 (1983) (stating that a person being identified as a police officer, without more, does not convert an encounter into a "seizure").  Therefore, plaintiff fails to raise a genuine issue of material fact that S.G. was falsely imprisoned by Deputy Alford, and plaintiff's false imprisonment claim against Deschutes County on behalf of S.G. is dismissed.

Next, to support S.G.'s claim of IIED, plaintiff must show the following:  (1) defendant intentionally inflicted severe emotional distress on S.G.; (2) defendant's actions caused S.G.'s severe emotional distress; and (3) defendant's actions were "an extraordinary transgression of the bounds of socially tolerable conduct."  McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995) (quoting Sheets v. Knight, 308 Or. 220, 236, 779 P.2d 1000 (1989)).  Socially intolerable conduct is conduct that is "outrageous in the extreme."  Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or. App. 234, 239, 828 P.2d 476 (1992).

Even assuming that S.G. suffered emotional distress, plaintiff fails to raise a genuine issue of material fact suggesting that defendant's actions were socially intolerable.  Deputy Alford merely accompanied Camreta during an investigation of possible

of S.G.'s constitutional rights, this argument is moot.

20   - OPINION AND ORDER

sexual abuse of S.G., following the arrest of S.G.'s father for sexually abusing another child.  Nothing in his actions remotely suggests "an extraordinary transgression of the bounds of socially tolerable conduct."  Accordingly, plaintiff's IIED claim against Deschutes County on behalf of S.G. is dismissed.

<u>CONCLUSION</u>

    For the reasons set forth above, defendants' Motions for Summary Judgment (docs. 41, 46, 50) are GRANTED, and defendants Deschutes County and Deputy Sheriff James Alford's Motion to Strike (doc. 87) is DENIED as moot.  This case is DISMISSED.
IT IS SO ORDERED.

    Dated this  23  day of March, 2006.


                    /s/ Ann Aiken

                    Ann Aiken
            United States District Judge

21   - OPINION AND ORDER